# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846 |
| | **JUDGE EDMUND A. SARGUS, JR.**<br>**Magistrate Judge Kimberly A. Jolson** |

**This document relates to:**
*Stinson v. Davol, Inc., et al.*,
**Case No. 2:18-cv-01022**

## MOTIONS IN LIMINE OPINION & ORDER NO. 48

## Defendants' Motions *in Limine* ("MIL") No. 2, 3, & 4 and Plaintiff's MILs No. 3 & 14

Plaintiff Aaron Stinson and Defendants C.R. Bard, Inc. and Davol, Inc. filed various MILs to exclude evidence in this case. Now before the Court are (A) Plaintiff's MIL No. 3 to Exclude Evidence That the PerFix Plug was Approved or Cleared by the FDA, and FDA 2009 Correspondence and Testimony as to the FDA's Intent With Respect to Such Correspondence (ECF No. 168); (B) Defendants' MIL No. 2 to Exclude Evidence and Argument Concerning Composix Kugel Ring Breaks, Recall, FDA Inspections, and Third-Party Audits (ECF No. 154); (C) Defendants' MIL No. 3 to Exclude Evidence and Argument That the Existence of the PerFix Light Plug is Evidence that the PerFix Plug is Defective (ECF No. 155); (D) Defendants' MIL No. 4 to Exclude Evidence and Argument Concerning Dr. Tan's Post-Implant Switch to the PerFix Light Plug as Her Preferred Inguinal Repair Option (ECF No. 152); and (E) Plaintiff's MIL No. 14 to Exclude All Evidence of Subsequent Negligent or Unskilled Medical Care (ECF No. 164).

# I.    Background[1]

Plaintiff's case will be tried as the third bellwether selected from thousands of cases in this multidistrict litigation ("MDL") titled *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846.  The Judicial Panel on Multidistrict Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections."  (Case No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of an Extra-Large PerFix Plug hernia mesh device, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remain for trial: design defect, failure to warn, negligence, breach of express warranty, and breach of implied warranty; the Court has reserved judgment on Plaintiff's claims for manufacturing defect, certain damages, and claims related to his current Bard Mesh implant.

The relevant facts here are that in 2015 Plaintiff underwent a right inguinal hernia repair with an Extra-Large PerFix Plug mesh, a product manufactured by Defendants.  In 2017, Plaintiff underwent exploratory surgery to determine if he had a recurrent hernia or nerve entrapment because of chronic pain in his right groin area.  The explanting surgeon, Dr. Radke, noted extensive

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case.  (Dispositive Motions Order ("DMO") No. 7, ECF No. 225.)  All docket citations are to the *Stinson* case, 2:18-cv-1022, unless otherwise noted.

scarring and found "a large ball approximately 2.5 cm in diameter of rolled up mesh next to the pubic tubercle." (ECF No. 89-22 at PageID #1134.)  Dr. Radke removed the mesh, which he described as "slow going and extremely difficult" because of the significant scarring.  (*Id.*)  Dr. Radke then repaired the hernia with another of Defendants' products, Bard Marlex Mesh.  (*Id.*)  Even after the explant surgery, Plaintiff claims to have continuing chronic pain and other complications.

## II.     Standards

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*."  *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016).  The practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial."  *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).  However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388 ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence.").

3

The denial, in whole or in part, of a motion *in limine* does not give a party license to admit all evidence contemplated by the motion; it simply means that the Court cannot adjudicate the motion outside of the trial context. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is" inadmissible. Fed. R. Evid. 402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").

### III.  Analysis

#### A.  Plaintiff's MIL No. 3

Plaintiff seeks to exclude evidence or argument that the PerFix Plug was "cleared" or "approved" by the FDA, evidence of correspondence from the FDA in 2009, or the meaning behind the correspondence. (ECF No. 168.) In response, Defendants state that they do not intend to introduce evidence or argument that the FDA "approved" or "cleared" the PerFix Plug, and that they agree to an appropriate instruction on FDA evidence. Defendants also agree that no expert

may speak for the FDA or opine on the FDA's intent behind the 2009 correspondence. Therefore, these portions of Plaintiff's motion are **DENIED AS MOOT**.

Plaintiff also asks the Court to exclude evidence of the 510(k) clearance[2] of Defendants' other mesh devices, such as the Marlex Mesh Dart[3] or PerFix Light Plug. (ECF No. 168 at PageID #7243–44.) According to Plaintiff such evidence may lead the jury to conclude that the PerFix Plug is safe because the FDA "cleared" similar devices. Defendants respond that the 1992 FDA clearance of the Marlex Mesh Dart is part of the PerFix Plug's "story" concerning Defendants' decision to market the PerFix Plug via the no-510(k) process. (ECF No. 203 at PageID #7764.) "In deciding whether a 510(k) was necessary for the PerFix Plug, FDA guidelines required Bard to compare the PerFix Plug to the Dart (i.e., the regulatory baseline) and determine whether the changes made to the Dart to create the PerFix Plug raised significant questions of safety and effectiveness." (*Id.* at PageID #7764–65.) Plaintiff's position here seems to be in direct contradiction with his response to Defendants' MIL No. 1.S. In that filing, Plaintiff asks the Court to allow "relevant evidence related to [Defendants'] conduct and decision to bring the PerFix Plug to market without 510(k) clearance." (ECF No. 213 at PageID #8061.) Defendants' decision to bring the PerFix Plug to market via the no-510(k) process involved a comparison between the PerFix Plug and the Marlex Mesh Dart. (ECF No. 203 at PageID #7765.) Therefore, while Defendants may not use the clearance of the Marlex Mesh Dart to show the PerFix Plug's safety, if Plaintiff intends to introduce evidence related to Defendants' decision not to use the 510(k)

---

[2] The 510(k) process has been described previously in this MDL in MIL Order No. 4 (Case No. 18-cv-1509, ECF No. 355 at PageID #18767–69).
[3] The PerFix Plug was developed as a line extension of the Marlex Mesh Dart. (ECF No. 89 at PageID #564.)

process in bringing the PerFix Plug to market, evidence of the Marlex Mesh Dart's clearance is relevant.

Additionally, the 510(k) clearance of the PerFix Light Plug is at issue. In his response to Defendants' MIL No. 3, Plaintiff claims that the PerFix Light Plug is "an integral part of the regulatory story that [Plaintiff] intends to tell at trial." (ECF No. 208 at PageID #7836.) He details Defendants' 510(k) application for the PerFix Light Plug and claims that "Defendants only informed the FDA of their rationale for not seeking 510k clearance for the PerFix Plug because the FDA requested that explanation" when Defendants submitted a 510(k) application for the PerFix Light Plug. (*Id.*) Plaintiff states that he plans to introduce evidence of the 510(k) process for the PerFix Light Plug. Therefore "Defendants will be permitted to walk through the door if Plaintiff opens it." (Case No. 18-cv-1509, MIL Order No. 8, ECF No. 390 at PageID #20906.)

Plaintiff further argues that if evidence regarding the 510(k) clearance of other devices is permitted, Plaintiff should be able to offer evidence regarding an Institute of Medicine Report on the 510(k) process. (ECF No. 168 at PageID #7243–44.) In the first bellwether case, *Johns v. C.R. Bard, Inc., et al.* (Case No. 18-cv-1509), the Court excluded evidence regarding the Institute of Medicine Report because it was "a criticism for the FDA and how they function." (Case No. 18-cv-1509, ECF No. 574 at PageID #31260.) The same reasoning applies here, and the Court adopts its prior ruling regarding the Institute of Medicine Report. Therefore, Plaintiff's MIL No. 3 (ECF No. 168) is **DENIED IN PART** and **DENIED IN PART AS MOOT**.

## B. Defendants' MIL No. 2

Defendants seek an order excluding evidence or argument concerning Composix Kugel ring breaks and recall, FDA inspections, and third-party audits. (ECF No. 154.) The Court addressed similar motions in the context of the first two bellwether trials in this MDL, *Johns* (Case No. 18-

cv-1509) and *Milanesi, et al. v. C.R. Bard, Inc., et al.* (Case No. 18-cv-1320).  In *Johns*, the Court granted the motion in part and denied the motion in part, agreeing with Defendants that "evidence from the FDA inspections and third-party audits that are device-specific [we]re irrelevant to th[at] case."  (Case No. 18-cv-1509, MIL Order No. 5, ECF No. 539 at PageID #18790.)  The Court found "one narrow admissible purpose" for the evidence, and allowed the plaintiff to "introduce evidence from the Composix Kugel FDA inspections and third-party audits that tend to prove that Defendants were aware of breaches of the FDCA and FDA regulations *if* he c[ould] show that Defendants committed the same or substantially similar violations in relation to the Ventralight ST prior to implantation."  (*Id.* at PageID #18791.)  The Court also noted that the FDA inspections addressed Sepramesh and Sepra Technology (the "ST" in "Ventralight ST").  (*Id.* at PageID #18790.)  In *Milanesi*, the Court noted that the Composix Kugel was the predicate device for the Ventralex, the device at issue in that case, which made the issues with the Composix Kugel relevant.  (Case No. 18-cv-1320, MIL Order No. 38, ECF No. 314 at PageID #17422.)  The Ventralex and Composix Kugel had the same design and materials, including a memory recoil ring.  (*Id.* at PageID #17423.)  Therefore, the Court denied Defendants' motion.

According to Defendants, the same grounds for admissibility do not apply in this case:

> The Composix Kugel was not a predicate device for the PerFix Plug (or vice versa). The ring weld break issues that led to the recall of the Composix Kugel and subsequent inspections and audits have nothing to do with the PerFix Plug or any issue in this case.  Nothing about the Composix Kugel recall and subsequent inspections and audits provides any conceivable "notice" for any design or warnings issue in this case.  All events concerning the Composix Kugel took place *after* the PerFix Plug was developed.  The PerFix Plug was not an acquired existing product or technology.  It was developed *before* the promulgation of the Quality System Regulation that featured so heavily in the prior trials, especially where the plaintiffs tried to link anything about the Composix Kugel to the issues in those cases.

(ECF No. 154 at PageID #6071 (emphases in original).)  Plaintiff responds that the evidence is all relevant to his strict liability design defect, negligence, and punitive damages claims.  According to Plaintiff, Defendants had only one Quality Management System ("QMS") in place for all of their hernia mesh products, including the PerFix Plug.  (ECF No. 211 at PageID #7946.) Therefore, the "systemic flaws" brought to light by the FDA inspections and third-party audits should have caused Defendants to make changes to the PerFix Plug's design.  (*Id.*)  Plaintiff describes the differences between the PerFix Plug and Composix Kugel highlighted by Defendants as "red herrings and superficial differences" which have no bearing on this issue.  (*Id.* at PageID #7947.)

> In *Johns*, the Court noted that:
>
> The clear implication from Plaintiff's briefing is that because the Composix Kugel device was recalled for being defective, as evidenced by the FDA inspections and third-party audits, it is more likely that Defendants' Ventralight ST device is defective as well.  But this is overt character evidence, or the classic propensity argument that [Federal] Rule [of Evidence] 404(b) prohibits." *United States v. Blakely*, 375 F. App'x 565, 573 (6th Cir. 2010). In other words, Plaintiff "generaliz[es] a defendants' earlier bad act to bad character and taking that as raising the odds that he did the later bad act now charged[.]" *Old Chief*, 519 U.S. at 180–81.

(Case No. 18-cv-1509, MIL Order No. 5, ECF No. 359 at PageID #18791.)  The same is true here. Although Plaintiff claims that he plans to use the evidence to "tell his story of the case," he does not present any evidence regarding the QMS in place at the time the PerFix Plug was developed and does not acknowledge that different regulations were in place at the time of the PerFix Plug's development.  Similar to *Johns*, "[t]he clear implication from Plaintiff's briefing is that because the Composix Kugel device was recalled for being defective, as evidenced by the FDA inspections and third-party audits, it is more likely that Defendants' [PerFix Plug] device is defective as well." (*Id.*)  Therefore, Defendants' MIL No. 2 is **GRANTED**.

### C.  Defendants' MIL No. 3

Defendants seek to exclude evidence and argument that the existence of the PerFix Light Plug, another of Defendants' polypropylene hernia mesh devices, is evidence that the PerFix Plug is defective.  (ECF No. 155.)  The PerFix Plug is "a pre-formed, three-dimensional device constructed of a fluted outer layer of Bard mesh and multiple inner layers of mesh attached at the tip" with a separate flat onlay mesh patch, and is used for the repair of inguinal, or groin, hernia defects.  (ECF No. 89-1 at PageID #619.)  The PerFix Light Plug is also a pre-formed cone-shaped mesh made of a fluted outer layer of mesh and multiple inner layers.  (ECF No. 155 at PageID #6306.)  Unlike the original PerFix Plug, which is made of a "traditional weight polypropylene mesh base," the PerFix Light Plug is made of the lighter weight, larger pore Bard Soft Mesh.  (*Id.*) Defendants submitted a 510(k) application for the PerFix Light Plug in 2009.  (*Id.* at PageID #6306–07.)  According to Defendants, Plaintiff has not established that his outcome would have been different had his implanting surgeon used a PerFix Light Plug instead of a PerFix Plug, nor that the PerFix Light Plug was available at the hospital at that time.  (*Id.* at PageID #6307.) Therefore, the existence of the PerFix Light Plug is irrelevant.

Plaintiff responds that the PerFix Light Plug is "one of many safer, feasible alternatives to the PerFix Plug," and shows that Defendants could have used a larger pore, lighter weight mesh in constructing the PerFix Plug but did not.  (ECF No. 208 at PageID #7832–33.)  It is also part of "the regulatory story that [Plaintiff] intends to tell at trial."  (*Id.* at PageID #7836.)  According to Plaintiff, Defendants "only informed the FDA of their rationale for not seeking 510k clearance for the PerFix Plug because the FDA requested that explanation" in response to Defendants' 510(k) application for the PerFix Light Plug.  (*Id.*)  In addition to being a safer alternative design, Plaintiff alleges that the existence of the PerFix Light Plug is evidence of Defendants' breach of duty of

9

care to Plaintiff. Defendants could and should have designed the PerFix Plug to be safer, but did not do so. (*Id.* at PageID #7837–38.)

Defendants argue that to prove a design defect Plaintiff must show that a defect specific to only the PerFix Plug caused his injury. (ECF No. 155 at PageID #6307.) However, the Court rejected that argument in its ruling on Defendants' motion for summary judgment (DMO No. 7, ECF No. 225 at PageID #9117–19), and the same reasoning applies here. The Court also addressed Defendants' argument that Plaintiff failed to present expert opinions regarding feasible alternative designs, and noted that Dr. Babensee "identifie[d] features such as a larger pore size or lighter mesh weight that could increase the PerFix Plug's safety." (*Id.* at PageID #9121.) The PerFix Light Plug is an example of a device with those features. In fact, Dr. Babensee pointed specifically to Bard Soft Mesh as an example of a larger pore, lighter weight mesh (ECF No. 91-3 at PageID #1310–11), and the PerFix Light Plug is made of Bard Soft Mesh (ECF No. 155 at PageID #6306.) Defendants' argument that "[e]vidence related to devices not involved whatsoever in Plaintiff's case—particularly if presented through a proffered expert—could mislead the jury and cause confusion" (*id.* at PageID #6309) is not well taken, as this argument seems to be in direct contradiction to their argument that "Plaintiff was required to present an alternative design that would have avoided his injury" and "could only do so through expert testimony" (*id.* at PageID #6307). Accordingly, Defendants' MIL No. 3 is **DENIED**.

### D. Defendants' MIL No. 4

Defendants seek to prevent Plaintiff from presenting evidence or testimony regarding Dr. Amy Tan's switch from the PerFix Plug to the PerFix Light Plug as her preferred device for hernia repair. At the time when Dr. Tan performed Plaintiff's hernia repair in 2015, she "used the PerFix [Plug] device as [her] standard first-line product" and only used different devices when there was

"a specific issue that required it."  (ECF No. 89-17 at PageID #1045.)  Dr. Tan later switched to the PerFix Light Plug as her preferred device.  (*Id.*)  She testified that she switched due to some patients' sensation of "awareness of the [PerFix Plug] mesh.  Patients would sometimes, you know, feel like it was a little bit uncomfortable on the side that had been repaired, and the lightweight mesh was designed to reduce some of that.  (*Id.*)  When Plaintiff's counsel asked if it was "fair to say that [she] moved to use the lighter weight PerFix because of the complications that patients had with the heavier PerFix," she answered in the affirmative.  (*Id.*)  Dr. Tan did not testify that she switched devices because of any complaints of chronic pain or inflammation, or any other complications other than a sensation of awareness of the mesh.  According to Defendants, Dr. Tan's switch to the PerFix Light Plug is not relevant to Plaintiff's claims because her decision to switch products was not due to a "risk of chronic groin pain, new information or warnings about it, or any information that [Defendants] had."  (ECF No. 152 at PageID #6050.)  Defendants also seek to exclude Dr. Tan's current opinion on mesh devices because she is not an expert witness. (*Id.*)

Plaintiff opposes Defendants' motion and argues that Dr. Tan's post-implant switch to the PerFix Light Plug is relevant to his failure to warn and negligence claims.  (ECF No. 209.)  Plaintiff claims that Defendants mischaracterize Dr. Tan's testimony, and that patients' awareness of the PerFix Plug was not the only reason for the switch.  (*Id.* at PageID #7856.)  According to Plaintiff, Dr. Tan described the sensation experienced by her patients as "discomfort" and agreed that she had switched to the PerFix Light Plug because of complications with the PerFix Plug.  (*Id.* at PageID #7856–57.)  Plaintiff testified, regarding the pain in the location of his hernia surgery, that it felt like "a pack of cigarettes stuck in there," and that it felt "like a foreign object."  (ECF No. 209-2 at PageID #7927.)  According to Plaintiff, this testimony shows that he experienced the

foreign object sensation described by Dr. Tan as the reason for her switch; however, although he testified that he also experienced the sensation prior to the explant, Plaintiff testified that he was experiencing that sensation at the time of the deposition, nearly two years after his PerFix Plug had been explanted.  (*Id.*)  Therefore, any foreign object sensation at the time of the deposition could not have been an awareness of the PerFix Plug because the device was no longer implanted in Plaintiff's body.

Plaintiff contends that the switch is relevant to his failure to warn claim, but while he claims he experienced a foreign object sensation or awareness of his mesh, at no point has Plaintiff alleged that Defendants should have warned of potential sensations of awareness of the mesh.  Instead, Plaintiff has argued that Defendants should have warned about risks of chronic inflammation and chronic pain (ECF No. 124 at PageID #4847–48), migration (*id.* at PageID #4848), and contraction (*id.* at PageID #4848–49).  Additionally, Plaintiff claims that although Dr. Tan noted the foreign body awareness sensation as her reason for switching, she "agreed that she moved to use of the PerFix Light 'because of the complications that patients had with the heavier PerFix.'" (ECF No. 209 at PageID #7857.)  Although Dr. Tan answered in the affirmative when Plaintiff's counsel asked if it was fair to categorize her switch because of awareness of the mesh as due to "complications that patients had with the heavier PerFix" (ECF No. 89-7 at PageID #1045), the awareness sensation was the sole reason she offered for switching products.  Plaintiff goes on to discuss the alleged increased risks of fibrotic reaction, contraction, and chronic pain, and the role they would have played in Dr. Tan's decision to use the PerFix Plug in Plaintiff's surgery.  (ECF No. 209 at PageID #7857.)  However, Dr. Tan did not attribute her decision to switch to the PerFix Light Plug to fibrotic reaction, contraction, or chronic pain, and those alleged risks are not relevant to the issue of her switch to the PerFix Light Plug.  Plaintiff has not shown that evidence of Dr.

Tan's post-implant switch to the PerFix Light Plug is relevant, therefore Defendants' MIL No. 4 is **GRANTED**.

### E. Plaintiff's MIL No. 14

Plaintiff seeks to preclude Defendants from claiming that they are not liable because Plaintiff received negligent or unskilled medical care after his August 2015 implant surgery. (ECF No. 164.) "It is familiar and well-established law [in Maine] that, when an injured party uses reasonable care in the selection of a surgeon to relieve an injury, the original tort-feasor is liable for any aggravation of such injury resulting from the unskillfulness or negligence of the surgeon so employed." *Andrews v. Davis*, 128 Me. 464, 148 A. 684, 685 (1930); *see also Mitchell v. Peaslee*, 143 Me. 372, 373, 63 A.2d 302, 303 (1948). Therefore, "because Maine law prohibits any effort by Defendants to avoid liability or reduce their damages by foisting responsibility on [Plaintiff's] doctors, Defendants' anticipated arguments and evidence along those lines are irrelevant, and thus inadmissible under Federal Rules of Evidence 401 and 402." (ECF No. 164 at PageID #7194.)

Defendants oppose Plaintiff's motion and argue that their medical expert's opinions regarding Plaintiff's explanting surgeon, Dr. Radke, should be admissible because Dr. Radke's conduct "speaks directly to whether Plaintiff's PerFix Plug was defective in any way, or that any defect caused his claimed injuries, making it highly relevant and admissible." (ECF No. 200 at PageID #7730.) In support of their argument, Defendants cite to cases that are inapposite. In one case, the court allowed testimony regarding the initial placement of an allegedly defective IVC filter manufactured by the defendants, not subsequent medical care. *In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00263-PHX-DGC, 2019 WL 1880029, at *2 (D. Ariz. Apr. 26, 2019). Defendants also cite to *McGinnis v. C.R. Bard, Inc.* However, in that opinion the court did not

13

offer an analysis or explanation of its ruling denying in part the plaintiff's motion *in limine* because it had held oral argument and ruled orally on that and other motions. *McGinnis v. C. R. Bard, Inc.*, No. BER-L-017543-14, 2018 WL 2456581, at *2 (N.J.Super.L. Feb. 08, 2018). Additionally, there is nothing to indicate that court's decision was based on Maine law.

It is clear that under Maine law, a tortfeasor is liable for the aggravation of an injury resulting from subsequent unskilled or negligent medical care. While the Court agrees that Plaintiff's subsequent medical care is a part of this case's "story," *see Old Chief v. United States*, 519 U.S. 172, 189 (1997), Plaintiff does not seek to exclude all evidence of his subsequent medical care. He seeks only to preclude evidence and argument that Defendants "are not liable to Plaintiff because he received negligent or unskilled medical care after the implant of Defendants' Extra-Large PerFix Plug on August 5, 2015." (ECF No. 164 at PageID #7188.) Accordingly, Plaintiff's MIL No. 14 is **GRANTED**.

## IV. Conclusion

For the reasons set forth above, Plaintiff's MIL No. 3 (ECF No. 168) is **DENIED IN PART** and **DENIED IN PART AS MOOT**; Defendants' MIL No. 2 (ECF No. 154) is **GRANTED**; Defendants' MIL No. 3 (ECF No. 155) is **DENIED**; Defendants' MIL No. 4 (ECF No. 152) is **GRANTED**; and Plaintiff's MIL No. 14 (ECF No. 164) is **GRANTED**.

As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

6/6/2023               s/Edmund A. Sargus, Jr.
**DATE**                **EDMUND A. SARGUS, JR.**
                        **UNITED STATES DISTRICT JUDGE**

14