## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION

**Case No. 2:18-md-2846**

**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

This document relates to:
*Stinson v. Davol, Inc., et al.*
Case No. 2:18-cv-01022

### EVIDENTIARY MOTIONS OPINION & ORDER No. 32

Before the Court is Defendants' Motion to Strike "Supplement" to Michael Beatrice's Expert Report (ECF No. 218), which is opposed by Plaintiff (ECF No. 228). For the reasons that follow, Defendants' motion is **GRANTED**.

### I.        Background[1]

Plaintiff's case is the third bellwether trial selected from thousands of cases in this multidistrict litigation ("MDL") against Defendants. The Judicial Panel on Multidistrict Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of allegations that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections." (No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

The relevant facts here are that in 2015 Plaintiff underwent a right inguinal hernia repair

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case. (Dispositive Motions Order ("DMO") No. 7, ECF No. 225.) All docket citations are to the *Stinson* case, 2:18-cv-1022, unless otherwise noted.

with an Extra-Large PerFix Plug mesh, a product manufactured by Defendants. In 2017, Plaintiff underwent exploratory surgery to determine if he had a recurrent hernia or nerve entrapment because of chronic pain in his right groin area. The explanting surgeon, Dr. Radke, noted extensive scarring and found "a large ball approximately 2.5 cm in diameter of rolled up mesh next to the pubic tubercle." (ECF No. 89-22 at PageID #1134.) Dr. Radke removed the mesh, which he described as "slow going and extremely difficult" because of the significant scarring. (*Id.*) Dr. Radke then repaired the hernia with another of Defendants' products, Bard Marlex Mesh. (*Id.*) Even after the explant surgery, Plaintiff claims to have continuing chronic pain and other complications.

The crux of Plaintiff's claims is that Defendants knew of certain risks presented by the PerFix Plug device but marketed and sold the device despite these risks and without appropriate warnings, causing Plaintiff's injuries. Plaintiff alleges that the polypropylene in the PerFix Plug degrades after implantation, which enhances the chronic inflammatory response in the body. (ECF No. 124 at PageID #4826.) Plaintiff also claims that the inflammation and resulting fibrosis are exacerbated by the PerFix Plug's shape, weight, and pore size. Plaintiff also claims that the PerFix Plug is susceptible to migration and has a high incidence of chronic pain. (*Id.*) According to Plaintiff, Defendants downplayed the rate and severity of complications caused by the PerFix Plug, even when faced with reports of negative outcomes, which created an unreasonable risk of significant and permanent harm to patients. (*Id.*)

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of the PerFix Plug, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remain for trial: design defect, failure to warn, negligence, breach of express

warranty, and breach of implied warranty; the Court has reserved judgment on Plaintiff's claims for manufacturing defect, certain damages, and claims related to his current Bard Mesh implant.

## II.    Legal Standard

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony, requiring parties to disclose the identity of any witness they may use at trial to present evidence e under Federal Rules of Evidence 702, 703, or 705.  The disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  The parties must make their expert disclosures "at the time and in the sequence that the court orders," and "supplement these disclosures when required under Rule 26(e)."  Fed. R. Civ. P. 26(a)(2)(D)-(E).  Rule 26(e) requires a party to supplement or correct its disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  If a party fails to provide information as required by Rule 26(a) or (e), they may not use that information at trial "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

The Sixth Circuit has held that district courts have broad discretion over whether to exclude untimely disclosed expert testimony.  *See Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000); *see also Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 752 (6th Cir. 2003) ("Rule 16 grants district courts broad discretion to enforce their scheduling orders.").  This Court has interpreted the supplementation permitted by Rule 26 as "limited to 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'"  *Winter Enterprises, LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-

3

360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019) (quoting *Antioch Co. Litig. Tr. v. McDermott Will & Emery, LLP,* No. 3:09-CV-218, 2016 WL 8257680, at *2 (S.D. Ohio July 15, 2016)).

### III.    Analysis

In the first bellwether trial, *Johns v. C.R. Bard, Inc., et al.*, Case No. 18-cv-1509, the plaintiff originally intended to use Dr. David Kessler as a regulatory expert, but Dr. Kessler was appointed as Chief Science Officer for the Biden administration's COVID-19 Response Task Force in January 2021.  (Case No. 18-cv-1509, ECF No. 452 at PageID #23324.)  Because of this appointment, the plaintiff was forced to withdraw Dr. Kessler as an expert and offer a replacement regulatory expert, Dr. Beatrice.  Likewise, the plaintiffs in the second bellwether trial, *Milanesi, et al. v. C.R. Bard, Inc., et al.*, Case No. 18-cv-1320, offered Dr. Beatrice as a substitute regulatory expert witness due to Dr. Kessler's unavailability.

Defendants have filed a motion to strike Dr. Beatrice's proposed "supplemental" report. (ECF No. 218.)  Dr. Beatrice served as an expert witness in the *Johns* and *Milanesi* trials when the PSC's previous expert witness became unavailable.  His expert report, which was served in those two cases, states that it relates to Steven Johns and Antonio Milanesi, the plaintiffs in the first two bellwether cases, and the Ventralight ST and the Ventralex Large Patch, the devices at issue in the first two bellwether cases.  (Beatrice Report, Case No. 18-cv-1320, ECF No. 153-3.)  The report does not mention Plaintiff Aaron Stinson or the PerFix Plug.  (*Id.*)  At a Case Management Conference on October 4, 2022, Plaintiff's counsel indicated that the PSC had recently discovered evidence of a line fire at one of Defendants' facilities.  (Case No. 18-md-2846, ECF No. 667 at PageID #8058–59.)  The parties informed the Court that there would not "be a production issue because the parties negotiated their sources of information, who the custodians were, et cetera."

(*Id.* at PageID #8060.)  Plaintiff's counsel indicated that Plaintiff's experts had been notified and would be ready to provide a "short supplementation" regarding the line fire.  (*Id.* at PageID #8062.) Aside from potentially serving as a replacement expert for Dr. Kessler, Dr. Beatrice was not disclosed as an expert in this case until a January 31, 2023 Case Management Conference when Plaintiff's counsel indicated that "[o]nce discovery [had] concluded on the line fire issue," Plaintiff would provide a supplemental report from Dr. Beatrice regarding the "significant quality systems implications . . . of the line fire itself and the lack of documentation surrounding it."  (Case No. 18-md-2846, ECF No. 695 at PageID #8199.)

Dr. Beatrice served as an expert witness and provided a report regarding the first two bellwether cases and the devices at issue.  In the context of this case, he was presented as an expert witness who would opine on and testify to the quality systems implications of the newly discovered line fire.  However, the Court has granted Defendants' Motion *in Limine* No. 7 to Exclude Evidence or Argument Concerning the 2011 Puerto Rico Line Fire.  (MIL Order No. 50, ECF No. 267; *see also* ECF Nos. 236, 266.)  Accordingly, no expert is necessary regarding the line fire. Dr. Beatrice's supplemental report is not relevant and is therefore excluded.

## IV.    Conclusion

For the reasons set forth above, Defendants' Motion to Strike "Supplement" to Michael Beatrice Expert Report (ECF No. 218) is **GRANTED**.

**IT IS SO ORDERED.**


**6/12/2023**                                 **s/Edmund A. Sargus, Jr.**
**DATE**                                        **EDMUND A. SARGUS, JR.**
                                                      **UNITED STATES DISTRICT JUDGE**