UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: DAVOL, INC./C.R. BARD, INC., POLYPROPYLENE HERNIA MESH PRODUCTS LIABILITY LITIGATION | Case No. 2:18-md-2846<br><br>JUDGE EDMUND A. SARGUS, JR.<br>Magistrate Judge Kimberly A. Jolson |

**This document relates to:**
*Stinson v. Davol, Inc., et al.*,
Case No. 2:18-cv-1022

## MOTIONS IN LIMINE OPINION & ORDER NO. 52

### Defendants' Motions *in Limine* ("MIL") Nos. 5 & 6

Plaintiff Aaron Stinson and Defendants C.R. Bard, Inc. and Davol, Inc. filed various MILs to exclude evidence in this case. Now before the Court are (A) Defendants' MIL No. 5 to Exclude Evidence and Argument Concerning Alleged Complications and Defects That Did Not Occur in This Case (ECF No. 153); and (B) Defendants' MIL No. 6 to Exclude Evidence and Argument Concerning Unsupported Damages (ECF No. 156).

### I.     Background[1]

Plaintiff's case will be tried as the third bellwether selected from thousands of cases in this multidistrict litigation ("MDL") titled *In Re: Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, 2:18-md-2846. The Judicial Panel on Multidistrict Litigation described the cases in this MDL as "shar[ing] common factual questions arising out of allegations

---

[1] For a more complete factual background, the reader is directed to the Court's summary judgment opinion and order in this case. (Dispositive Motions Order ("DMO") No. 7, ECF No. 225.) All docket citations are to the *Stinson* case, 2:18-cv-1022, unless otherwise noted.

that defects in defendants' polypropylene hernia mesh products can lead to complications when implanted in patients, including adhesions, damage to organs, inflammatory and allergic responses, foreign body rejection, migration of the mesh, and infections." (Case No. 2:18-md-02846, ECF No. 1 at PageID #1–2.)

Plaintiff brings this action to recover for injuries sustained as a result of the implantation of an Extra-Large PerFix Plug hernia mesh device, alleging that Defendants knew of the risks presented by the device but marketed and sold it despite these risks and without appropriate warnings. After summary judgment, the following claims remain for trial: design defect, failure to warn, negligence, breach of express warranty, and breach of implied warranty; the Court has reserved judgment on Plaintiff's claims for manufacturing defect, certain damages, and claims related to his current Bard Mesh implant.

The relevant facts here are that in 2015 Plaintiff underwent a right inguinal hernia repair with an Extra-Large PerFix Plug mesh, a product manufactured by Defendants. In 2017, Plaintiff underwent exploratory surgery to determine if he had a recurrent hernia or nerve entrapment because of chronic pain in his right groin area. The explanting surgeon, Dr. Radke, noted extensive scarring and found "a large ball approximately 2.5 cm in diameter of rolled up mesh next to the pubic tubercle." (ECF No. 89-22 at PageID #1134.) Dr. Radke removed the mesh, which he described as "slow going and extremely difficult" because of the significant scarring. (*Id.*) Dr. Radke then repaired the hernia with another of Defendants' products, Bard Marlex Mesh. (*Id.*) Even after the explant surgery, Plaintiff claims to have continuing chronic pain and other complications.

## II. Standards

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). The practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388 ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."). The denial, in whole or in part, of a motion *in limine* does not give a party license to admit all evidence contemplated by the motion; it simply means that the Court cannot adjudicate the motion outside of the trial context. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is" inadmissible. Fed. R. Evid.

402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) ("In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").

### III.     Analysis

#### A.  Defendants' MIL No. 5

The Court addressed this issue in the context of the first two bellwether trials in this MDL, *Johns v. CR Bard, Inc., et al.* and *Milanesi, et al. v. C.R. Bard, Inc., et al.* In *Johns*, the Court granted Defendants' motion with regard to cancer and fear of future conditions because the only alleged injury remaining in the case was adhesions. (Case No. 18-cv-1509, ECF No. 322 at PageID #17276.) In *Milanesi*, the Court allowed the plaintiff to introduce evidence of ring breaks in the Composix Kugel because of its similar design or risk profile to the Ventralex, the device at issue in that case. (Case No. 18-cv-1320, MIL Order No. 38, ECF No. 314 at PageID #17425–27.) The Court also allowed evidence of polypropylene degradation because the plaintiff had presented admissible expert testimony about polypropylene degradation and its relevance to that case. (*Id.*)

In this case, Defendants seek to exclude evidence of alleged defects and injuries that did not occur in this case. According to Defendants, "any evidence or argument falling outside the scope of Dr. Grischkan's theory of defect (excessive polypropylene) and injury (groin pain) is

4

irrelevant and inadmissible." (ECF No. 153 at PageID #6063.) Defendants point to Dr. Grischkan's opinions regarding contraction, migration, nerve entrapment, mesh tissue stiffening, bowel obstruction, and organ fistulization and penetration. (*Id.* at PageID #6064.) The Court has already addressed the scope of these opinions in Evidentiary Motions Order ("EMO") No. 26 in which it excluded Dr. Grischkan's opinions regarding migration, nerve entrapment, mesh tissue stiffening, bowel obstruction, and organ fistulization, but allowed his opinions regarding mesh shrinkage or contraction (ECF No. 227). Defendants also point to Dr. Grischkan's opinions regarding deadly complications, fatal outcomes, and death, which the Court has found inadmissible because they lacked a connection to Plaintiff's theory of injury or the injuries themselves. (*Id.* at PageID #9169–70.) The same reasoning applies to Defendants' contention that Plaintiff should be prohibited from arguing that Defendants "should have warned about such hypothetical complications or defects with the PerFix Plug." (ECF No. 153 at PageID #6065.) Plaintiff may not argue that Defendants should have warned about a hypothetical risk of injuries that lack a connection to Plaintiff's theory of injury or injuries themselves.

### B. Defendants' MIL No. 6

Defendants ask the Court to preclude Plaintiff from presenting evidence or argument "concerning claims of damages for which Plaintiff has no support." (ECF No. 156 at PageID #6318.) Defendants point specifically to Plaintiff's claims "concerning his bladder problems, his sexual dysfunction, weight gain, worsening anxiety and depression, and disability." (*Id.*) According to Defendants, many of these conditions predate Plaintiff's hernia surgery, and his "sole medical causation expert, Dr. Grischkan, has expressly disclaimed any opinions that the PerFix Plug caused or worsened any of these purported injuries." (*Id.*) In Dr. Grischkan's report, he notes generally the possibility of bladder problems caused by the PerFix Plug (ECF No. 93-4 at PageID

5

#2061, 2063, 2067) but does not claim that Plaintiff suffered from any such problems. In his deposition, Dr. Grischkan pointed out that he was not a urologist and declined to offer an opinion on whether Plaintiff's urologic complaints were caused by unrelated conditions or by the PerFix Plug. (ECF No. 93-1 at PageID #1850.) He also agreed that he did not include opinions in his expert report about Plaintiff's depression, anxiety, or sexual dysfunction. (*Id.*) In response, Plaintiff argues that Defendants are using this motion as a vehicle to seek partial summary judgment, and that "[e]vidence of damages should be evaluated as it is offered rather than prematurely limited based on [Defendants'] incomplete recitation of the evidence." (ECF No. 212 at PageID #7959.) Plaintiff also asks that any deficiencies in expert testimony as to "certain medical conditions like depression or disability" do not preclude him from introducing evidence of "garden variety mental anguish, pain and suffering, and physical impairment related to the injuries caused by" the PerFix Plug. (*Id.*)

Indeed, in their motion for summary judgment Defendants made the same arguments regarding damages for claims of urinary issues, sexual dysfunction, weight gain, and depression and anxiety. (ECF No. 89 at PageID #612–13.) The Court reserved ruling on that portion of Defendants' motion due to Plaintiff's ongoing medical issues. Plaintiff can testify as to traditional pain and suffering issues. As a layperson he can testify as to his weight gain, depression, and anxiety. However, without a medical expert to support those claims, he cannot argue medical causation as it relates to his urinary issues and sexual dysfunction. Accordingly, Defendants' MIL No. 6 is **GRANTED IN PART** and **DENIED IN PART**.

IV. Conclusion

For the reasons set forth above, Defendants' MIL No. 5 (ECF No. 153) is **GRANTED**, and Defendants' MIL No. 6 (ECF No. 156) is **GRANTED IN PART** and **DENIED IN PART**.

6

Case: 2:18-cv-01022-EAS-KAJ Doc #: 304 Filed: 10/03/23 Page: 7 of 7 PAGEID #: 10886

As with all *in limine* decisions, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

**10/3/2023**                                         **s/Edmund A. Sargus, Jr.**
**DATE**                                              **EDMUND A. SARGUS, JR.**
                                                         **UNITED STATES DISTRICT JUDGE**